Elias **GOMEZ–GRANADOS,** Plaintiff,

v.

Richard **SMITH, Officer in Charge of the Salt Lake City Office of the United States Immigration and Naturalization Service, or his successor, Defendant.**

**Civ. No. C–84–0205W.**

United States District Court,
D. Utah, C.D.

May 14, 1985.

Joseph H. Gallegos, Michael R. Sciumbato, Salt Lake City, Utah, for plaintiff.

Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. Joseph H. Gallegos and Michael R. Sciumbato, representing the plaintiff, and Joseph W. Anderson, representing the defendant, argued before this court on April 10, 1985. Both parties submitted memoranda. The court has given careful consideration to the parties' written and oral arguments and various authorities cited therein but is mindful that a review of an agency's determination must be limited to the record. Now being fully advised, the court renders the following memorandum decision and order.

*Background*

The issue presented by these motions concerns whether a "substantial" violation of the conditions of a delivery bond has occurred. The facts of this matter are not disputed by the parties. On September 2, 1982, Ruben Gomez-Granados, ("Ruben") an alleged alien, was served with an Order to Show Cause, Notice of Hearing and Warrant for Arrest of an Alien by the United States Immigration and Naturalization Service ("INS"). A bond of $3,000 was set in order to procure Ruben's release. On September 3, 1982, the plaintiff, Elias, posted the Immigration Bond in the required amount. The conditions of the bond required that Ruben be produced to an immigration officer upon each and every request of that officer until deportation proceedings were terminated or until Ruben was accepted for detention or deportation. On December 27, 1982, notice was forwarded to the plaintiff, as the obligor, demanding surrender of Ruben on January 13, 1983. The plaintiff received that notice on December 30, 1982. Ruben was also notified of the hearing by notice which he received on December 30, 1982. Ruben then secured counsel, Joseph H. Gallegos, to represent him at the hearing. On January 6, 1983, Mr. Gallegos filed by mail an Entry of Appearance as attorney with the INS. At the same time, he filed a written motion for a continuance of the hearing, stating that he had two other matters set for hearing or trial on January 13, 1983. A cover letter accompanying the motion and entry of appearance requested that the INS advise Gallegos if there were any questions concerning the matter or the motion for continuance. These documents were mailed on January 6, 1983, but were not received by the INS until January 11, 1983. Assuming that the continuance would be granted, neither Mr. Gallegos nor Ruben appeared at the hearing on January 13, 1983. Mr. Gallegos did not call the INS to double-check on the continuance. On January 13, 1983, the immigration judge wrote a letter to Mr. Gallegos, informing him that the Immigration Court's practice was not

to grant a continuance without either the respondent or his attorney appearing and moving for one on the record. Neither Ruben nor Gallegos had prior notice of this "practice" nor was there any written indication of there being such a practice or rule. The letter also gave notice of a possible breach of bond and advised Mr. Gallegos that he could contact the officer in charge concerning the matter. On April 13, 1983, a notice of the breach of the bond was mailed to the plaintiff. The plaintiff appealed the decision of the breach to the INS commissioner on April 25, 1983. That appeal was denied on January 4, 1984. The plaintiff then filed this action for declaratory relief claiming that no substantial violation of the bond conditions occurred and requesting that the INS be restrained from disposing of the $3,000.

## Discussion

■■■ An INS regulation, 8 C.F.R. § 103.6(e), provides that a delivery bond may be forfeited if there has been a "substantial violation of the stipulated conditions." The addition of the word "substantial" to the regulation in 1974, (*see* 39 F.R. 12334 (April 5, 1974)) indicates that not every violation will necessarily result in forfeiture. Determining whether a violation is "substantial" requires consideration of such factors as the extent of the breach, whether it was intentional or accidental on the part of the alien, whether it was in good faith and whether the alien took steps to make amends or put himself in compliance. *International Fidelity Ins. Co. v. Crosland,* 490 F.Supp. 446 (S.D.N.Y.1980); *see also Bahramizadeh v. United States I.N.S.,* 717 F.2d 1170 (7th Cir.1983); *Matter of Allied Fidelity Insurance Co.,* Interim Decision 2972 (1984).

The Commissioner in the instant case found that "the failure of the alien to appear was intentional, that counsel made an unwarranted assumption that his motion for a continuance would be granted and that the pendency of such a request excused the alien from appearance." Accordingly, the Commissioner found the breach

to be substantial. While recognizing that an administrative agency or officer's interpretation of a regulation should be shown "great deference," *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) this court finds that the Commissioner's interpretation of the term "substantial" in 8 C.F.R. § 103.6(3) is inconsistent with the regulation. The violation of the terms of the bond in the present case occurred solely because the alien's attorney assumed that it was reasonable to expect a continuance to be granted when he had entered a notice of appearance, mailed a request for a continuance seven days in advance, and had requested a reply should one not be granted. He did not receive any indication that the continuance would not be granted and so informed the alien and the plaintiff that it would not be necessary for them to appear at the hearing. There is no indication in the record that the plaintiff or alien in any way intended to evade his responsibilities to be present at the January 13th hearing nor intended to be absent when the INS next scheduled one. Plaintiff's breach was made in good faith as he relied on the advice of counsel that he need not produce the alien as the hearing would be continued. Nor would it have been appropriate for the alien to have appeared alone without his retained counsel.

The government cites the case of *Matter of Arbelaez-Naranjo,* Interim Decision 2942 (1983) in support of its contention that the breach was substantial. In *Naranjo,* the alien failed to appear at a scheduled 9:00 a.m. hearing. At 10:00 a.m. after the time for the scheduled hearing had passed, counsel for the obligor called to inform the INS attorney that the alien would not appear that day. Later that morning, counsel again explained that alien was ill. Arrangements were made with counsel and the INS for a hearing to be rescheduled for that afternoon at 2:00 p.m. Again, the alien did not appear. At about 4:30 p.m., counsel informed the court that he and the alien were ready to appear but by then the trial judge had departed. The alien and attorney appeared the next morning at the court but did not present a physician's note

excusing the absence. The Regional Commissioner in *Naranjo* determined that these facts showed that a substantial breach had occurred. The instant circumstances contrast sharply with those of *Naranjo* however. Here, the alien's attorney mailed a request for a continuance to the INS seven days in advance of the hearing date. The INS received the request two days before the hearing date and had adequate advance notice of a legitimate reason for the failure of the alien and counsel to appear. There was no written policy or rule that would have informed the attorney of the trial court's practice regarding the granting of continuance. Nor did the INS inform the attorney of the court's practice, despite the attorney's clear request to be notified if there was any problem with the continuance. The defendant notes that counsel could have attempted to check with the court before the hearing date to determine if continuance had been granted. Counsel's failure to do so, however, was not the kind of negligent error or bad faith or intentional conduct that should result in plaintiff's forfeiture of the bond. The plaintiff, after all, did not produce the alien because of the advice of counsel. A finding that the breach here was substantial would erase the distinction between a "substantial" violation and simply a "violation" and would leave unanswered the question of what would constitute an "unsubstantial" violation. "Not every violation need be substantial especially if trivial, accidental or incurred in good faith." *International Fidelity Ins. Co. v. Crosland,* 717 F.2d at 1174.

Accordingly,

IT IS HEREBY ORDERED and declared that no substantial violation of the bond conditions occurred and the bond in the amount of $3,000 remains in full force.